**Gilbert WATERS et al.**

v.

**Wesley COKER, M.D.**

Supreme Court of Tennessee, at Nashville.

May 30, 2007 Session Heard at Cookeville.[1]

June 29, 2007.

---

1. Oral argument was heard at American Legion Boys' State at Cookeville, Tennessee

Tech University, as a part of the Supreme Court Advancing Legal Education for Students project.

Robert L. Trentham and Taylor B. Mayes, Nashville, Tennessee, for the appellant, Wesley Coker, M.D.

Larry D. Ashworth and Richard H. Baston, II, Nashville, Tennessee, for the appellees, Gilbert and Hixie Waters.

## OPINION

GARY R. WADE, J., delivered the opinion of the Court, in which WILLIAM M. BARKER, C.J., and JANICE M. HOLDER and CORNELIA A. CLARK, JJ. joined.

In a medical malpractice suit filed by the Plaintiffs, Gilbert Waters and his wife, Hixie Waters, against an orthopedic surgeon, Dr. Wesley Coker, the trial court provided a divided jury with a variation of the "dynamite charge." Because the Plaintiffs did not present the issue as a ground for relief in the motion for new trial or otherwise provide the trial court with the opportunity to correct its error, the issue has been waived. Accordingly, the judgment of the Court of Appeals is reversed and the judgment of the trial court is reinstated.

After Gilbert Waters suffered a brain injury following lumbar laminectomy surgery, the Plaintiffs filed a medical malpractice suit against the hospital, an anesthesiologist, a nurse anesthetist, and an anesthesiology practice group. Nine days later, the Plaintiffs amended the complaint to add Dr. Wesley Coker as a defendant. The Plaintiffs contend that the use of morphine and fentanyl during the course of the surgery caused serious brain injury. The Defendant Coker denied fault, alleging that the injury was the result of a series of strokes.

At the conclusion of the trial, which extended over a period of two separate weeks, the jury returned a verdict in favor of the Defendant. Prior to the completion of the deliberations, however, the foreman sent a note informing the trial judge of a deadlock: "The jury in the case of Gilbert Waters and Dr. Coker has reached an impasse with a vote of eleven and one. Do you have any additional instructions?" The trial court informed the parties and their counsel of the content of the note and then offered to either terminate the proceedings by mistrial because of the "deadlocked jury or you-all can agree on a dynamite charge." Counsel for the Plaintiffs immediately agreed to a supplemental instruction and counsel for the Defendant, after discussions, also agreed to the "dynamite" charge. By then, deliberations had lasted one and one-half days. There was no indication at that point as to whether the majority of the jurors favored a verdict for the Plaintiffs or the Defendant.

The trial judge recalled the jury, acknowledged their division, and asked them to continue. The supplemental instruction was as follows:

Remember this, . . . don't give up your convictions merely for the purpose

of reaching a verdict. However, also remember that this was an expensive proceeding on both sides; very expensive, as you can imagine, bringing doctors from different parts of the country and having discovery depositions, the lawyers' time. And unfortunately, in Tennessee we don't have a majority verdict or eight to three verdict as they do in some states, or nine to two.

So none of us know ... how you're voting. But I want the one person to search their conscience. If they feel like they can equally come to a position with the other [eleven], to do that.... But, again, don't give up your convictions, but do remember that the case will have to be tried all over again, and that's something that I hope you will consider.

So I'll excuse you.... And as I said, nobody knows how that eleven-one is, and that's good. We'll leave it just like that.

After excusing the jury, the trial judge asked if there were "any objections to my dynamite ... charge." When the Defendant's counsel stated that there was no objection, the trial judge emphasized the point to both parties: "State it now." While defense counsel repeated his consent, counsel for the Plaintiffs made no further comment but lodged no objection.

In the motion for new trial, the Plaintiffs presented several issues but did not cite the erroneous dynamite charge as a ground for relief. The precise issue, raised for the first time to the Court of Appeals, was as follows:

The trial court committed reversible error in giving the jury a dynamite charge where the court failed to safeguard the jury's disclosure of the degree of their division, failed to give the charge as contained in the original instruction so that the charge constituted a new charge rather than a repeated charge, and affirmatively instructed a single juror, although anonymously, to consider the costs and expenses of the litigation and their further deliberation.

The Court of Appeals first determined that the supplemental instruction violated the standard adopted in *Kersey v. State*, 525 S.W.2d 139, 144 (Tenn.1975), observing that the trial court made reference to the time and expense incurred for the trial and then made a comment critical of the requirement for a unanimous verdict.[2] After concluding that the language might have coerced the single dissenting juror into surrendering a conscientiously held position and thereby affected the verdict, the Court of Appeals granted the Plaintiffs a new trial.

### *The Dynamite Charge*

In *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896) the jury retired to deliberate after the initial charge and later, not having reached a unanimous verdict, returned seeking additional information. The trial court provided a supplemental instruction which was ultimately approved by the United States Supreme Court. A summary of the *Allen* dynamite charge appears in the opinion:

---

**2.** Rule 48 of the Tennessee Rules of Civil Procedure does permit the parties to a lawsuit to "stipulate that the jury consist of any number less than that provided by law, or that a verdict or a finding of a stated majority of the jurors shall be taken as the verdict or finding of the jury." Tenn. R. Civ. P. 48. In *Norris v. Nationwide Mut. Fire Ins. Co.*, 728 S.W.2d 335 (Tenn.Ct.App.1986), the defendant waived his right to a jury of twelve by knowingly, voluntarily, and without objection, proceeding to trial with only six jurors. The issue was first raised in the motion for new trial. *Id.* at 338; *see also State v. Dunn*, 224 Tenn. 255, 453 S.W.2d 777, 778 (Tenn.1970).

[I]n a large proportion of cases absolute certainty could not be expected; that, although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority were for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority.

*Id.* at 501, 17 S.Ct. 154.

Almost sixty years later, a similar situation occurred in *Simmons v. State,* 198 Tenn. 587, 281 S.W.2d 487 (Tenn.1955). After the initial instructions, the jury returned, indicating that they were unable to agree upon a verdict. The trial court provided the following supplemental charge, which was a nearly verbatim recitation of the charge approved in *Allen:*

While the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of your fellows, yet you should examine the questions submitted with candor and with a proper regard and d[e]ference to the opinions of each other. It is your duty to decide the case if you can conscientiously do so. You should listen with a disposition to be convinced to each others arguments. If the larger number are for conviction or acquittal, a dissenting juror should consider whether his doubt was a reasonable one which made no impression on the minds of so many other men, equally honest, and equally intelligent with himself.

The Jury should not go contrary to their convictions but they should properly give heed to the opinions of their fellow jurors and by reasonable concessions reach a conclusion which although not originally entertained by any of them, nevertheless, may be one to which all can scrupulously adhere.

In other words, the minority should listen to the views of the majority with the disposition of being convinced.

*Simmons,* 281 S.W.2d at 490. After an appeal of the verdict, this Court specifically approved the charge, upholding the principle established in *Allen* and affirming the variation in content offered by the trial court.

Later, however, in *Kersey v. State,* a criminal case, this Court reconsidered the propriety of the *Allen/Simmons* dynamite charge in the context of the requirement of a unanimous jury. Observing that any inquiry regarding the division of a jury was improper, this Court specifically ruled as follows:

[W]hen a jury's deliberations have not produced a verdict, and [the jury] returns to the courtroom and so reports, the presiding judge should admonish the jury, at the very outset, not to disclose their division or whether they have entertained a prevailing view. The only permissive inquiry is as to progress and the jury may be asked whether it believes it might reach a verdict after further deliberations. If the trial judge feels that further deliberations might be productive, he may give supplemental instructions in accordance with subsequent portions of this opinion.

*Kersey*, 525 S.W.2d at 141 (citation omitted). Describing the *Allen/Simmons* dynamite charge as an "undue intrusion" into the "exclusive province of the jury," this Court specifically prohibited an effort to secure a verdict when "a single juror may be coerced into surrendering views conscientiously entertained." *Id.* at 144. The *Kersey* opinion established a pattern instruction to be used as a part of both the initial charge and any supplement in the event of an impasse in the deliberations of the jury. This Court declared that any variations in the following form were impermissible:

> The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.
>
> It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

*Id.* at 145.

In 1978, this Court applied the *Kersey* principle to the civil case of *Vanderbilt Univ. v. Steely*, 566 S.W.2d 853 (Tenn. 1978). In that instance, the jury was unable to reach a verdict in a suit for personal injuries. The trial judge provided a supplemental charge slightly different from that provided in *Kersey*, reminding the jury of the time and expense of the trial and instructing each juror to consider the opinion of the others, if proper. *Id.* at 854-55. Because the supplemental charge differed from that adopted in *Kersey* and had not been included in the original instructions to the jury, a new trial was granted. *Id.* at 854. While holding that a supplemental charge in violation of *Kersey* qualified as a ground for a new trial only when the record affirmatively demonstrates that the error affected the results, the Court in *Vanderbilt* granted a new trial based upon the following rationale:

> [T]he charge given informed the jury that, should they fail to agree, a new trial would be necessary, and emphasized the waste of time, money, and effort that this would entail. It contains language that could be interpreted as implying that the jurors had a "duty" to agree. Finally, the entire charge was improperly emphasized by being given for the first time only after the jury had been deadlocked for several hours. We believe that these departures from the *Kersey* standard, when taken collectively, worked to the material prejudice of the petitioner.

*Id.*

The Court of Appeals has reached similar results. For example, in *Bass v. Barksdale*, 671 S.W.2d 476 (Tenn.Ct.App. 1984), the trial judge, when informed by the foreman of the jury that the opinion of one juror precluded a unanimous verdict, provided a supplemental charge, which pointed out that the failure to reach a verdict would result in a retrial and constitute a waste of taxpayers' money. *Id.* at 484. While no objections were made to the supplemental charge, the Court of Appeals ordered a new trial on the basis of the trial court's violation of the *Kersey* rule. *Id.* at 486. Placing particular emphasis on the trial judge's failure to admonish the jury not to divulge its division,

the Court of Appeals observed that the minority juror should not be asked to abandon an honestly held conviction.

■ More recently, in *State v. Torres,* 82 S.W.3d 236 (Tenn.2002), a case involving the giving of a dynamite charge to a capital sentencing jury, this Court reaffirmed its holding in *Kersey,* which directed compliance with Section 5.4 of the American Bar Association Standards relating to trial by jury. *Id.* at 254 (citing *Kersey,* 525 S.W.2d at 145). "Trial courts 'shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals,'" and the jury may be discharged "if it appears that there is no reasonable probability of agreement." *Id.* (quoting *Kersey,* 525 S.W.2d at 144). In *Torres,* the trial court omitted three prefatory sentences that comprise a portion of the mandatory instructions adopted in *Kersey.* This Court determined that other circumstances, such as the length of the deliberations, the lack of request for supplemental instructions, and the report by the jury of an unequivocal deadlock, established that the improper charge had affected the verdict and thereby warranted a new sentencing hearing. *Id.* at 257–58.

### *Analysis*

■ As indicated, in this case, the Court of Appeals concluded that the supplemental charge *not only conflicted with the specific* instruction adopted in *Kersey* but also violated certain of the procedural requirements identified in that case, namely:

(1) jurors should be advised not to disclose how the jury may be divided;

(2) the only permissive inquiry by the court is about progress and whether further deliberations may be helpful;

(3) if there are supplemental instructions, the standard charge in *Kersey* is required; and

(4) the *Kersey* supplemental charge may only be given if it was included in the main charge.

■ The charge provided by the trial court in this case did indeed violate the *Kersey* rule. The requirement of a unanimous jury qualifies as a precious individual right. *See* Tenn. Const. art. I, § 6 ("That the right to trial by jury shall remain inviolate...."). Our endorsement of the *Kersey* rule is without qualification.

■ This case differs from *Kersey* in two important ways. First, the trial court asked both the Plaintiffs and the Defendant to consider the propriety of the giving of a dynamite charge before the jury was returned to the courtroom. The Plaintiffs readily agreed to the proposal and defense counsel, after consultation with their client, announced his consent. Given the choice between a mistrial and a dynamite charge, each party affirmatively chose the latter. The trial court summoned the jury and then provided a variation of the *Allen/Simmons* instructions. Upon completion, the trial court asked both the Plaintiffs and the Defendant for any objections to the charge. As indicated, the Defendant specifically approved of the content and the Plaintiffs, while failing to make a comment on the record, chose not to voice any concerns despite a repeated invitation to do so.

More importantly, the Plaintiffs failed to include the violation of the *Kersey* rule as a ground for relief in their motion for new trial. While the Plaintiffs alleged numerous grounds for relief in the motion, they did not complain about either the propriety or the content of the dynamite charge. In fact, the supplemental instruction merited no mention from the Plaintiffs whatsoever. The trial court, therefore, had no opportunity to reconsider the charge or its effect upon the verdict.

█ Rule 51.02 of the Tennessee Rules of Civil Procedure provides as follows:

After the judge has instructed the jury, the parties shall be given an opportunity to object, out of hearing of the jury, to the content of an instruction given or to failure to give a requested instruction, *but failure to make objection shall not prejudice the right of a party to assign the basis of the objection as error in support of a motion for a new trial.*

Tenn. R. Civ. P. 51.02 (emphasis added). Our trial courts have a duty to give accurate jury instructions. Under this rule, a party may seek a new trial because of inaccuracies in the jury charge even if there is no objection at trial. *Grandstaff v. Hawks,* 36 S.W.3d 482, 489 (Tenn.Ct. App.2000). However, Rule 3 of the Tennessee Rules of Appellate Procedure provides, in pertinent part, as follows:

Provided, however, that in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, *unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.*

Tenn. R.App. P. 3(e) (emphasis added).

█ In all civil cases tried to a jury, any ground not cited in the motion for new trial has been waived for the purposes of appeal. *Boyd v. Hicks,* 774 S.W.2d 622, 625 (Tenn.Ct.App.1989). The issues presented in a motion for new trial must be specified with reasonable certainty so as to enable appellate courts to ascertain whether the issue was first presented for correction in the trial court; otherwise, the mat-

ter cannot be considered on appeal. *State v. Gauldin,* 737 S.W.2d 795, 798 (Tenn. Crim.App.1987). As indicated, any issues concerning instructions given or refused by the trial court are waived unless included in the motion for new trial. *State v. Keel,* 882 S.W.2d 410, 416 (Tenn.Crim.App. 1994). Although appellate courts should view a motion for new trial in the light most likely to consider a specific question, the preservation of the issue in some form is essential for review. *Fahey v. Eldridge,* 46 S.W.3d 138, 143 (Tenn.2001).

█ In *Mason v. Tenn. Farmers Mut. Ins. Co.,* 640 S.W.2d 561 (Tenn.Ct. App.1982), our Court of Appeals specifically addressed the failure of a party to challenge the propriety of a jury instruction and concluded that Rule 3(e) of the Tennessee Rules of Appellate Procedure barred consideration of the issue on appeal:

[T]he reason therefor is to allow the trial court to rectify any errors that might have been made at trial and to avoid "appeal by ambush." The rule is not new in this jurisdiction, having been the law prior to the adoption of the existing rules of appellate procedure.

*Id.* at 563 (citation omitted). The comments to Rule 3 support that conclusion and make reference to Rule 36(a) for the proposition that "relief need not be granted to a party who fails to take whatever action is reasonably available to prevent or nullify the harmful effect of an error." Tenn. R.App. P. 3(e), Advisory Comm'n Comments. The Advisory Commission Comments to Rule 36(a) provide that "[t]he last sentence of this rule is a statement of the accepted principle that a party is not entitled to relief if the party invited error, waived an error, or failed to take whatever steps were reasonably available to cure an error." Tenn. R.App. P. 36(a), Advisory Comm'n Comments. Generally,

a party to a lawsuit cannot complain of an error if he created the situation. *Waterhouse v. Perry*, 195 Tenn. 458, 260 S.W.2d 176, 178 (Tenn.1953). Typically, an issue not brought to the trial court's attention in the motion for new trial cannot be raised on appeal unless it amounts to plain error " 'seriously affect[ing] the fairness, integrity, or public reputation of judicial proceedings.' " *Manning v. State*, 500 S.W.2d 913, 914 (Tenn.1973) (quoting *Silber v. United States*, 370 U.S. 717, 718, 82 S.Ct. 1287, 8 L.Ed.2d 798 (1962)). There has been no specific allegation of plain error in this instance and no argument addressing the factors permitting its application.

Because the Plaintiffs failed to raise the erroneous jury charge in the motion for a new trial, they are not entitled to present the issue for appellate review. The waiver rule applies. Accordingly, the judgment of the Court of Appeals is reversed and the verdict of the jury in the trial court is reinstated.

Costs of this appeal are taxed against the Plaintiffs, Gilbert and Hixie Waters, and their surety, for which execution may issue if necessary.

